FILED

June 08, 2011

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003549922

ANDREA M. MILLER, State Bar No. 88992
JAMES C. KEOWEN, State Bar No. 173546
NAGELEY, MEREDITH & MILLER, INC.
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 386-8292
Facsimile: (916) 386-8952
amiller@nmlawfirm.com
jimkeowen@nmlawfirm.com

Counsel for SK PM Corp., SK Foods, LLC, SKF
Canning, LLC, Blackstone Ranch Corporation,
Monterey Peninsula Farms, LLC, Salyer Management
Company, LLC, SK Farms Services, LLC, SK Frozen
Foods, LLC, SS Farms, LLC, SSC Farming, LLC, SSC
Farms I, LLC, SSC Farms II, LLC, SSC Farms III, LLC,
SKF Aviation, LLC, and CSSS, LP d/b/a Central Valley
Shippers

*Please see continuation page for a complete list of the
moving parties and their respective counsel.*

## UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re: | CASE NO.: 09-29162-D-11 |
| | Chapter 11 |
| SK FOODS, LP, a California limited partnership, et al., | DCN: FWP-4 |
| Debtors. | **DEFENDANTS' OMNIBUS REPLY TO OPPOSITIONS TO MOTIONS TO STAY ADVERSARY PROCEEDINGS** |
| | **Date:** June 15, 2011 |
| | **Time:** 10:00 a.m. |
| | **Courtroom:** 34 |
| BRADLEY SHARP, et al., | Adv. Proc. No. 09-02543 |
| Plaintiff, | DCN: MSS-2 |
| v. | |
| CSSS, L.P., et al., | |
| Defendants. | |

| | |
|---|---|
| BRADLEY SHARP, et al., | Adv. Proc. No. 09-02692 |
| Plaintiff, | DCN: MSS-2 |
| v. | |
| SSC FARMS I, LLC, et al., | |
| Defendants. | |
| BRADLEY SHARP, et al., | Adv. Proc. No. 10-02014 |
| Plaintiff, | DCN: MSS-2 |
| v. | |
| SCOTT SALYER, as trustee of the Scott Salyer Revocable Trust, et al., | |
| Defendants. | |
| BRADLEY SHARP, et al., | Adv. Proc. No. 10-02015 |
| Plaintiff, | DCN: MSS-2 |
| v. | |
| SCOTT SALYER, in his individual capacity and as trustee of the Scott Salyer Revocable Trust, et al., | |
| Defendants. | |
| BRADLEY SHARP, et al., | Adv. Proc. No. 10-02016 |
| Plaintiff, | DCN: MSS-2 |
| v. | |
| SKF AVIATION, LLC, et al., | |
| Defendants. | |
| BRADLEY SHARP, et al., | Adv. Proc. No. 10-02017 |
| Plaintiff, | DCN: MSS-2 |
| v. | |
| FRED SALYER IRREVOCABLE TRUST, et al., | |
| Defendants. | |

| | | |
|---|---|---|
| 1 | BRADLEY SHARP, et al., | Adv. Proc. No. 11-02338 |
| 2 | Plaintiff, | DCN: LJL-1 |
| 3 | v. | |
| 4 | SALYER AMERICAN FRESH FOODS, et al., | |
| 5 | Defendants. | |
| 6 | BRADLEY SHARP, et al., | Adv. Proc. No. 11-02337 |
| 7 | Plaintiff, | DCN: NMM-1 |
| 8 | v. | |
| 9 | SKPM CORPORATION, et al., | |
| 10 | Defendants. | |
| 11 | BRADLEY SHARP, et al., | Adv. Proc. No. 11-02348 |
| 12 | Plaintiff, | DCN: NMM-1 |
| 13 | v. | |
| 14 | BLACKSTONE RANCH CORPORATION, et al., | |
| 15 | Defendants. | |
| 16 | BANK OF MONTREAL, | Adv. Proc. No. 11-02339 |
| 17 | Plaintiff, | DCN: MSS-1 |
| 18 | v. | |
| 19 | CALIFORNIA FRANCHISE TAX BOARD, et al., | |
| 20 | Defendants. | |
| 21 | BANK OF MONTREAL, | Adv. Proc. No. 11-02340 |
| 22 | Plaintiff, | DCN: NMM-1 |
| 23 | v. | |
| 24 | CARY SCOTT COLLINS, et al., | |
| 25 | Defendants. | |

| | |
|---|---|
| ANDREA M. MILLER, State Bar No.  88992<br>JAMES C. KEOWEN, State Bar No. 173546<br>NAGELEY MEREDITH & MILLER, INC.<br>8001 Folsom Boulevard, Suite 100<br>Sacramento, California  95826<br>Telephone:  (916) 386-8292<br>Facsimile:  (916) 386-8952<br>amiller@nmlawfirm.com<br>jimkeowen@nmlawfirm.com<br><br>Counsel for SK PM Corp., SK Foods, LLC,<br>SKF Canning, LLC, Blackstone Ranch<br>Corporation, Monterey Peninsula Farms, LLC,<br>Salyer Management Company, LLC, SK Farms<br>Services, LLC, SK Frozen Foods, LLC, SS<br>Farms, LLC, SSC Farming, LLC, SSC Farms I,<br>LLC, SSC Farms II, LLC, SSC Farms III, LLC,<br>SKF Aviation, LLC, and CSSS, LP d/b/a<br>Central Valley Shippers | STEVEN H. FELDERSTEIN, State Bar No.<br>056978<br>PAUL J. PASCUZZI, State Bar No.  148810<br>TANIA M. MOYRON, State Bar No. 235736<br>FELDERSTEIN FITZGERALD<br>WILLOUGHBY & PASCUZZI LLP<br>400 Capitol Mall, Suite 1450<br>Sacramento, California  95814<br>Telephone:  (916) 329-7400<br>Facsimile:  (916) 329-7435<br>sfelderstein@ffwplaw.com<br>ppascuzzi@ffwplaw.com<br>tmoyron@ffwplaw.com<br><br>Counsel for Scott Salyer, individually and as<br>trustee of the Scott Salyer Revocable Trust, and<br>the Scott Salyer Revocable Trust |
| MALCOLM S. SEGAL, State Bar No.  075481<br>SEGAL & KIRBY<br>770 L Street, Suite 1440<br>Sacramento, California  95814<br>Telephone:  (916) 441-0828<br>Facsimile:  (916) 446-6003<br>msegal@segalandkirby.com<br><br>Counsel for Scott Salyer, individually and as<br>trustee of the Scott Salyer Revocable Trust, and<br>the Scott Salyer Revocable Trust | LARRY J. LICHTENEGGER, State Bar No.<br>048206<br>LICHTENEGGER LAW OFFICES<br>3850 Rio Road, Suite 58<br>Carmel, CA 93926<br>Telephone: (831) 626-2801<br><br>Counsel for the Fred Salyer Irrevocable Trust,<br>Gerard Rose as trustee of the Fred Salyer<br>Irrevocable Trust, and Salyer American Fresh<br>Foods |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT........................................................................................ 1

SUPPLEMENTAL STATEMENT OF FACTS .......................................................... 2

ARGUMENT ................................................................................................................ 3

I.  The BMO Oppositions Ignore the Standard Set Forth in Judge Karlton's Order ............ 3

II. Contrary to BMO's and the Trustee's Assertions, There Are No
    Other Available Witnesses .................................................................................. 4

    A.  The Allegations Contained in the Adversary Complaints Are Specifically Against
        Mr. Salyer.................................................................................................... 4

    B.  Other Witnesses Are Not Available for Testimony or Their Testimony
        is Insufficient............................................................................................... 5

III. The Allegations of Mr. Salyer's Criminal Conduct Are Necessary to Establish
     Insolvency ........................................................................................................ 7

IV. Contrary to the Trustee's Assertions, the Preliminary Injunction Has Worked .............. 9

CONCLUSION ............................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

Hopkins v. D.L. Evans Bank (In re Fox Bean Co.)
   287 B.R. 270 (Bankr. D. Idaho 2002), aff'd, 144 Fed. Appx. 697 (9th Cir. 2005) .................... 8

Ierardi v. Lorillard, Inc.
   1991 U.S Dist. LEXIS 11320 (E.D. Pa. 1991) ........................................................................... 7

Proseus v. Anchorline, Ltd.
   26 F.R.D. 165, 167 (S.D.N.Y. 1960) .......................................................................................... 7

Scott Salyer ("Mr. Salyer"), individually and as trustee of the Scott Salyer Revocable Trust, the Scott Salyer Revocable Trust, SK PM Corporation, SK Foods, LLC, SKF Canning, LLC, Blackstone Ranch Corporation, Monterey Peninsula Farms, LLC, Salyer Management Company, LLC, SK Farms Services, LLC, SK Frozen Foods, LLC, SS Farms, LLC, SSC Farming, LLC, SSC Farms I, LLC, SSC Farms II, LLC, SSC Farms III, LLC, SKF Aviation, LLC, and CSSS, LP d/b/a Central Valley Shippers (collectively, the "Salyer Parties") hereby file this omnibus reply (the "Reply") to the oppositions (the "Oppositions") of Bradley D. Sharp, the chapter 11 trustee (the "Trustee") and Bank of Montreal ("BMO") to the Salyer Parties' motions (each, as applicable, a "Motion to Stay") for a stay of the following adversary proceedings (the "Adversary Proceedings") pending before this Court: (1) Sharp v. Salyer, et al., Adv. P. No. 10-02014 (the "Substantive Consolidation Action"); (2) Sharp v. CSSS, L.P., Adv. P. No. 09-02543 (the "Drum Line Action"); (3) Sharp v. SS Farms I, LLC, et al., Adv. P. No. 09-02692 (the "Quiet Title Action"); (4) Sharp v. Salyer, et al., Adv. P. No. 10-02015 (the "Breach of Fiduciary Duty Action"); (5) Sharp v. SKF Aviation, et al., Adv. P. No. 10-02016 (the "Avoidance Action"); (6) Sharp v. Fred Salyer Irrevocable Trust, Adv. P. No. 10-02017(the "FSIT Action"); (7) Sharp v. Salyer American Fresh Foods, et al., Adv. P. No. 11-02338 (the "SAFF Action");[1] (8) Bank of Montreal v. California Franchise Tax Board, et al., Adv. P. No. 11-02339 (the "FTB Action"); and (9) Bank of Montreal v. Collins, et al., Adv. P. No. 11-02340 (the "Collins Action").[2] In support of the Reply, the Salyer Parties respectfully represent as follows:

**PRELIMINARY STATEMENT**

Notwithstanding the strained arguments of the Trustee and BMO, the Salyer Parties have carried their burden under the standard laid out by the District Court on appeal with respect to the stay of the actions at bar. First, BMO's Opposition should be rejected to the extent that it asks

---

[1] The Trustee filed a statement with respect to Salyer American Fresh Foods' Motion to Stay the SAFF Action, in which the Trustee requested a continuance of the hearing on the Motion to Stay until July 15, 2011. SAFF has no objection to such continuance.

[2] The Salyer Parties moved to stay (a) Sharp v. SKPM Corp., Adv. P. No. 11-02337, (b) Sharp v. Blackstone Ranch Corp., Adv. P. No. 11-02348, and (c) certain contested matters in the main bankruptcy case. The Salyer Parties and the Trustee have reached stipulations to stay such adversary proceedings as well as certain current and forthcoming contested matters in the main bankruptcy case, without prejudice to the Salyer Parties' right to renew their motions to stay.

this Court to consider a standard for a stay that is quite different than the standard dictated by the District Court. Second, for the reasons explained in more detail below, while it may be true that Mr. Salyer would not be the only witness called by the Salyer Parties in these actions, the absence of him as a witness will prevent the Salyer Parties from defending themselves adequately, which is precisely what the District Court ordered must be avoided on remand. Third, the Trustee concedes that it must rely on proof of criminal conduct by Mr. Salyer in order to prove insolvency at relevant periods. Finally, the Court should ignore the Trustee's allegations of supposed breaches of the Preliminary Injunction which are not properly before the Court and are in any event exaggerated at best.

## SUPPLEMENTAL STATEMENT OF FACTS

Bank of Montreal. Since the Salyer Parties filed the Motions to Stay, two of the Adversary Proceedings commenced by the Trustee were transferred to BMO. On December 13, 2010, the Court entered an order pursuant to Federal Rule of Bankruptcy Procedure 9019 approving a settlement agreement between the Trustee and BMO (the "Settlement Agreement").[3] Under the Settlement Agreement, the Trustee agreed to transfer to BMO on account of its allowed secured claim, among other things, the Drum Line Action.[4] Moreover, under the Settlement Agreement, the Trustee agreed to transfer to BMO on account of BMO's super priority claim, among other things, the Breach of Fiduciary Duty Action. Accordingly, BMO filed the opposition to the Salyer Parties' Motion to Stay the Drum Line Action and the Breach of Fiduciary Duty Action.

Criminal Proceedings. On June 1, 2011, a status conference was held in the criminal proceedings pending against Mr. Salyer. At the status conference, the District Court set the trial dates as follows: the trial confirmation hearing is set for March 27, 2012, and the jury trial is scheduled to commence on April 17, 2012.

---

[3] The order approving the Settlement Agreement is pending appeal before the District Court under case number 2:10-cv-03467-LKK.

[4] Under the Settlement Agreement, the Trustee transferred to BMO: "The equipment related to the Drum Line Litigation and the proceeds recovery and right to recovery from the sale or resolution of that controversy (including the proceeds of all recoveries arising out of that litigation . . . )."

## I. The BMO Oppositions Ignore the Standard Set Forth in Judge Karlton's Order

As the Remand Order provides, the relevant inquiry is "whether discovery from or testimony of Salyer or his criminal counsel is reasonably necessary to dispose of a particular matter before the Bankruptcy Court in the adversary proceedings." Remand Order at 5 (footnote omitted). That this is the relevant inquiry is seemingly lost in BMO's oppositions to the applicable Motions to Stay (as applicable, each a "BMO Opposition" and, collectively, the "BMO Oppositions").

In the BMO Oppositions, BMO completely ignores the facts that the District Court has already determined that requiring Mr. Salyer to invoke his Fifth Amendment privilege question-by-question is both unnecessary and undesirable given the palpable overlap between the criminal indictment and the adversary proceeding allegations of the Trustee. BMO's argument that the Motions to Stay are premature because Mr. Salyer has not properly invoked any Fifth Amendment privilege, see, e.g., BMO Opposition in the FTB Action at 3-4, not only ignores the legal and factual determinations of the District Court, but also the standard for determining the stay issue dictated in the Remand Order.

Further, BMO argues that the Motions to Stay "fall short of articulating any fundamental due process right that is abridged by Movants' potential inability to offer certain testimony of Salyer." See, e.g., BMO Opposition in the FTB Action at 5. Again, this ignores the language of the Remand Order, which provides that "[t]he [District Court] found that the due process rights of Appellants may be infringed if they cannot adequately defend themselves in the adversary proceedings without discovery from or testimony of Salyer, who cannot be compelled to testify under the Fifth Amendment, or his criminal counsel, who cannot be compelled to violate the attorney-client privilege." Remand Order at 5 (emphasis added). The Remand Order has articulated the parameters of the Salyer Parties' due process rights and developed a relevant inquiry to ensure the protection of such rights.

BMO also argues that Mr. Salyer can respond with non-incriminating testimony. See, e.g., BMO Opposition in FTB Adversary at 5. This ignores the language and the intent of the

Remand Order. The question is not whether Mr. Salyer can respond at all; the question is whether the defendants can adequately defend themselves in the adversary proceedings without access to Mr. Salyer's <u>full and complete</u> testimony. As more fully described below, they cannot.

Absent BMO's inappropriate attempt to reconstruct the standard set forth in the Remand Order, there does not seem to be a dispute that, minimally, a stay should be entered preventing any discovery against Mr. Salyer and his attorneys in all matters and, particularly, in all matters in which Mr. Salyer is a named defendant.

## II. Contrary to BMO's and the Trustee's Assertions, There Are No Other Available Witnesses

### A. The Allegations Contained in the Adversary Complaints Are Specifically Against Mr. Salyer

As noted in the Motions to Stay, Mr. Salyer is a named defendant in various Adversary Proceedings and the allegations contained in the adversary complaints (the "<u>Adversary Complaints</u>") make it plain that discovery from Mr. Salyer is necessary to the defense of the Adversary Proceedings. The allegations contained in the Adversary Complaints are directed at Mr. Salyer in one of two ways: (a) BMO and the Trustee make allegations specifically respecting Mr. Salyer and his conduct, irrespective of whether he is a named defendant and/or (b) BMO and the Trustee make allegations against the Salyer Entities, which are alleged to be controlled by Mr. Salyer.

Only Mr. Salyer can defend the allegations made against him and his conduct, and such allegations are central to the Adversary Complaints. For example, the Trustee alleges in the Substantive Consolidation Complaint that:

> <u>Salyer</u> purposely blurred the legal distinctions among the Debtor, the Owner Defendants, and Affiliated Defendants in order to advance his personal objectives. <u>He</u> failed to maintain any separation of legal representation between and among the Debtor, the Owner Defendants and Affiliated Defendants and allowed sophisticated legal counsel to access confidential information of one entity to be used for the benefit of other entities and <u>himself personally</u>.

Substantive Consolidation Complaint ¶ 64 (emphasis added). Such allegations are at the root of the Substantive Consolidation Complaint, as are the allegations against Mr. Salyer in other

Adversary Proceedings. Not only is Mr. Salyer the only person who can testify with respect to allegations of his conduct, but he also <u>must</u> testify to such matters to establish an adequate defense to such allegations – other potential witnesses have insufficient knowledge with respect to such matters, not to mention that any testimony of such witnesses would likely be subject to hearsay and other evidentiary objections.

**B.**     <u>Other Witnesses Are Not Available for Testimony or Their Testimony is Insufficient</u>

BMO insists that Mr. Salyer's testimony is not required and that, even ignoring this, the relevant defendants may designate anyone they wish under Rule 30(b)(6). <u>See, e.g.</u>, BMO Opposition in Drum Line Action at 5. Similarly, the Trustee listed a number of potential witnesses who could testify in certain of the Adversary Proceedings. In the Trustee's opposition to the Motion to Stay the Substantive Consolidation Action (the "<u>Substantive Consolidation Opposition</u>"), the Trustee argued that the following individuals should be able to testify: Shondale Seymour, Steve King, Richard Emmett, Mark McCormick, Richard Washburn, Lisa Crist, Jeanne Johnston, Richard Lawrence, and Mark S. Grewal. Substantive Consolidation Opp. at 5-6. In the Trustee's opposition to the Motion to Stay the Quiet Title Action (the "<u>Quiet Title Opposition</u>"), the Trustee argued that the following individuals should be available to testify: Gary Perry, Richard Washburn, Rick Emmett, Richard Freitas, Steve King, Mark McCormick, and Shondale Seymour. Quiet Title Opp. at 10. In the Trustee's opposition to the Motion to Stay the FSIT Action (the "<u>FSIT Opposition</u>"), the Trustee argued that the testimony of Gerard Rose and Shondale Seymour was sufficient. FSIT Opp. at 4. In the Trustee's opposition to the Motion to Stay in the Avoidance Action (the "<u>Avoidance Opposition</u>"), the Trustee argued that Shondale Seymour, Mark S. Grewal, and Richard Washburn should be able to testify. Avoidance Opp. at 8.

As an initial matter, the Salyer Parties brought to the District Court's attention, arguably a major consideration in its ruling in the District Court Order, that none of these "alternative witnesses" are adequate to the task for the following reasons. Steven King has been indicted, entered a plea, and signed a cooperation agreement with the U.S. Attorney prosecuting the Salyer criminal action. In the single instance in which Mr. King has testified, relating to the drum line

issue, his attorney would not permit him to respond to any questions about his actions <u>before he became an employee of the Trustee</u>. Such truncated testimony would not, of course, benefit anyone except the attorneys who are paid to attend the deposition. Lisa Crist has also been indicted and is a cooperating witness for the U.S. Attorney. Jeanne Johnston has not been indicted but is identified as a witness cooperating with the United States Attorneys' Office. Richard Lawrence was only formerly associated with SKPM Corp. but now resides in Australia and is beyond the jurisdiction of this Court. Attorneys for the Salyer Parties have been unable to locate Richard Washburn or Richard Emmett. Mark Grewal's counsel has made clear that although he will obey a deposition subpoena he will not be allowed to answer any questions but will instead assert his Fifth Amendment privilege as to questions related to SK Foods. Thus, the only truly available witness on the Trustee's list is Mark McCormick who cannot, as addressed below, act as a 30(b)(6) witness in these proceedings.

Further, to suggest that Ms. Seymour can provide the necessary testimony for the Salyer Parties' defense is ridiculous at best. Ms. Seymour has been the Trustee's key witness in all respects of these chapter 11 cases and her testimony <u>against Mr. Salyer</u> has been relied upon by the Trustee to form his cases. In fact, Ms. Seymour testified on behalf of the Trustee in proceedings with respect to the issuance of the Preliminary Injunction (as defined below) and is clearly adverse to the Salyer Parties. If anything, Ms. Seymour's testimony creates the reasonable necessity of Mr. Salyer's testimony to impeach that of Ms. Seymour. For example, in the Declaration of Shondale Seymour in Support of the Trustee's Ex Parte Motion for a Temporary Restraining Order and Order to Show Cause re Preliminary Injunction, filed in the Substantive Consolidation Action, the Breach of Fiduciary Duty Action, the Quiet Title Action, and the Avoidance Action, Ms. Seymour declared that Mr. Salyer "exercised ultimate control over each of the Defendants and gave instructions to the management of each defendant . . . ." <u>Id.</u> ¶ 6. Likewise, in the FIST Action, Ms. Seymour declares that Mr. Salyer "instructed [her] to reclassify the loan from FSIT as an investment, instead of a note receivable . . . ." Declaration of Shondale Seymour in Support of Motion for Summary Judgment ¶ 31. Given Ms. Seymour's view of Mr. Salyer's involvement, with which the Salyer Parties disagree, Ms. Seymour's testimony cannot

seriously be argued to render Mr. Salyer's testimony unnecessary for the defense of such Adversary Proceedings. If anything, it supports the necessity of Mr. Salyer's testimony.

Additionally, even if the potential witnesses listed by the Trustee were available, their testimony is simply inadequate for the Salyer Parties' defense. This is particularly true in the Adversary Proceedings in which Mr. Salyer himself is a named defendant. As noted above, many of the allegations made are directed at Mr. Salyer. As another example, in the Quiet Title Action, the Trustee contends that "SK Foods was wrongfully deprived of legal title to [the subject properties] by virtue of <u>Scott Salyer's</u> breach of his fiduciary obligations to SK Foods and the actions of [certain Farm Entities] acting in concert with <u>Scott Salyer</u>." Quiet Title Complaint ¶ 47 (emphasis added). With respect to this and other similar allegations directed at Mr. Salyer and his conduct, no other party can more appropriately defend Mr. Salyer's conduct than Mr. Salyer himself. Indeed, as noted above, any testimony by other parties in defense of Mr. Salyer's conduct would likely be subject to hearsay and other evidentiary objections. Moreover, the allegations against Mr. Salyer are not separable from the allegations against the other Salyer Parties such that the Adversary Proceedings could realistically proceed against the other parties. After all, the Trustee has alleged time and time again that Mr. Salyer is the party in control of the various Salyer Parties. Accordingly, Mr. Salyer's testimony is more than reasonably necessary for the Salyer Parties' defense, it is essential.

Finally, none of the persons identified by the Trustee are current employees of any of the Salyer Parties. As previously noted in the Motions to Stay, a corporation cannot be compelled to make a designation of a former officer or employee because those individuals "cannot be supposed" to "identify their interests with those of their former employers to such an extent that admissions by them should be held to bind the employer." <u>Proseus v. Anchorline, Ltd.</u>, 26 F.R.D. 165, 167 (S.D.N.Y. 1960); <u>Ierardi v. Lorillard, Inc.</u>, 1991 U.S Dist. LEXIS 11320 (E.D. Pa. 1991). Accordingly, there are no appropriate parties available to testify other than Mr. Salyer.

### III.    The Allegations of Mr. Salyer's Criminal Conduct Are Necessary to Establish Insolvency

As noted in the relevant Motions to Stay, in order for BMO or the Trustee to prevail on

many of their allegations, they must prove the Debtors' insolvency. Only the Trustee objected to the Salyer Parties' theory that any theories of insolvency rely upon allegations of Mr. Salyer's criminal conduct. Contrary to the Trustee's assertions, the Trustee must indeed rely on allegations of Mr. Salyer's criminal conduct to establish such insolvency.

First, the Trustee argues that Mr. Salyer's guilt or innocence is irrelevant to whether SK Foods has incurred liabilities based on those activities. See, e.g., Trustee Opposition in Substantive Consolidation Action at 12. Contrary to the Trustee's assertions, Mr. Salyer's guilt or innocence is not only relevant, but proof of guilt is in fact necessary to establish SK Foods' insolvency. With respect to those individuals who have already pled guilty, they are not alleged by the Trustee to be the individual in control of SK Foods; rather, Mr. Salyer is. Moreover, individuals have different motivations for pleading guilty; if anything, that SK Foods' employees have pled guilty with respect to certain acts increases the relevance and necessity of the testimony of Mr. Salyer, as the party alleged to be in control of SK Foods, to defend against the contentions of SK Foods' alleged insolvency.

Second, the Trustee argues that SK Foods' insolvency can be established by expert testimony and retrojection. See, e.g., Substantive Consolidation Opposition at 11-13. Although expert testimony may aid in the establishment of insolvency, Mr. Salyer's testimony will inevitably be required. Under these circumstances, where audited financial reports have revealed no insolvency and criminal allegations against Mr. Salyer would potentially lead to civil damages, any reputable expert would find Mr. Salyer's testimony respecting his guilt or innocence relevant to the insolvency inquiry.

With respect to retrojection, the court applying retrojection in the case cited by the Trustee relied on those very documents that have established the Debtors' solvency in this case. See Hopkins v. D.L. Evans Bank (In re Fox Bean Co.), 287 B.R. 270, 282 (Bankr. D. Idaho 2002), aff'd, 144 Fed. Appx. 697 (9th Cir. 2005) (considering tax returns, financial statements, and bankruptcy schedules to establish insolvency by retrojection). As defined by the Trustee, retrojection is an "approach in which later-in-time financial reports or indices showing insolvency are coupled with an analysis of whether or not changes occurring in the intervening period would

have affected the debtor's solvency." See, e.g., Substantive Consolidation Opp. at 11-12 n.7. Under these circumstances, the only conceivable theory is that the Trustee is relying on allegations of Mr. Salyer's criminal conduct to establish the "changes occurring in the intervening period" affecting SK Foods' solvency. Accordingly, the very application of retrojection necessitates Mr. Salyer's testimony to defend such allegations.

**IV.    Contrary to the Trustee's Assertions, the Preliminary Injunction Has Worked**

The Trustee contends that Judge Karlton's willingness to stay the Adversary Proceedings is premised on his finding that the Preliminary Injunction[5] protected the Trustee and creditors from the dissipation of assets while Mr. Salyer's criminal case progressed. See, e.g., Substantive Consolidation Opp. at 2. Therefore, the Trustee argues, in the absence of that protection, no stay should be granted. See, e.g., id. However, the Trustee fails to reveal to this Court that the Trustee made these very same arguments to the District Court in advance of the District Court's order on remand. Moreover, the Trustee fails to reveal that the District Court rejected the Trustee's unproven allegations then for precisely the same reason they should be rejected here – they are simply not before the Court: as Judge Karlton noted in the Remand Order, if a party "attempts to seek [the] court's consideration of recent events to suggest that the preliminary injunction may actually be insufficient[,] [t]his evidence must first be brought before the Bankruptcy Court in a motion to amend or lift a stay." Remand Order at 7. In such a circumstance, of course, the moving party would have the burden of proof respecting any disregard of the Preliminary Injunction and the effect thereof. If the Trustee in fact believes that the Preliminary Injunction has been violated, the Trustee has a process at his disposal to remedy any such breach. Equity favors the vigilant – the Court should not waste its time with the Trustee's alleged breaches that the Trustee considers to be either too immaterial or too unlikely to be proven to cause the Trustee

---

[5] The term "Preliminary Injunction" refers to that certain preliminary injunction entered by the Court on March 20, 2010 in certain of the Adversary Proceedings, as such preliminary injunction was subsequently modified by (a) the Order on Defendants' Motion to Modify Preliminary Injunction, dated October 13, 2010, (b) the Amended Preliminary Injunction, dated January 20, 2011, (c) the Stipulation and Order Further Modifying Preliminary Injunction, dated February 16, 2011, (d) the Supplemental Stipulation and Order Further Modifying Preliminary Injunction, dated May 1, 2011, and (e) the Second Supplemental Stipulation and Order Further Modifying Preliminary Injunction, dated May 10, 2011.

to seek a proper remedy.

Specifically, the Trustee references three alleged incidents of alleged breach of the Preliminary Injunction. First, the Trustee believes that there was an improper attempt to liquidate a life insurance policy by Mr. Salyer through one of his attorneys. The incident involved an attempt by Mr. Salyer to find out information regarding personal policies that were never subject to the Preliminary Injunction; nevertheless, the insurance broker, aware of the Preliminary Injunction, notified the Trustee. Although there was a dispute as to what policies Mr. Salyer's inquiry related to, no actions were taken that impacted assets subject to the Preliminary Injunction in any way.

Second, the Trustee complains that there were improper payments made to Gary Perry who the Trustee alleges is or was an attorney for the Debtors. Under the terms of the Preliminary Injunction, the payments were promptly disclosed exactly in accordance with its terms. Upon such disclosure, the Trustee raised an issue due to the size of the payments in relation to the fact that the Trustee was unaware of Mr. Perry's continued participation on behalf of certain Salyer Parties. As the parties were in the midst of a court-ordered mediation, and the Salyer Parties did not desire that any such disagreement derail those discussions, the payments were promptly reversed and the Salyer Parties agreed that the payments would not be made in the future without first seeking relief from the Court. Inexplicably, the Trustee views this constructive process as "harmful." However, the Trustee ignores the fact that any potential harm was remedied precisely because the Preliminary Injunction was in place. The Preliminary Injunction provided a mechanism for challenging and remedying questionable activity, and the issue was resolved without Court intervention.

Third, the Trustee believes that certain farmland subject to the Preliminary Injunction was inappropriately subleased. Certain Farm Entities leased farmland (the "Leased Land") to Nature's Fresh Farms and Green Barn Farms, Inc. The principal of such entities, Eric Mireles, purported to sublease land belonging to the Farm Entities that was not a part of the Leased Land. Once that was discovered, the Farm Entities immediately sought and are currently seeking to reach an agreement with the Trustee that will ultimately bring more money to the Farm Entities (over

whose assets the Trustee is seeking control). The Farm Entities had no control over the acts of Mr. Mireles; nevertheless, because the Preliminary Injunction was in place, the Farm Entities are making every effort to arrive at a consensual solution with the Trustee for the benefit of all parties involved. The Farm Entities have received no consideration from this sublease to date, but should be able to remedy the issue promptly. The Trustee cannot allege that any harm has resulted from these incidents; accordingly, there is no need to waste the Court's time where the District Court has already rejected the same litigation tactics by the Trustee.

## **CONCLUSION**

For the foregoing reasons, the Salyer Parties respectfully request that the Court grant the Motion and such other relief as the Court deems appropriate.

DATED: June 8, 2011

NAGELEY MEREDITH & MILLER, INC.


/s/ James C/ Keowen
JAMES C. KEOWEN
Counsel for SK PM Corp., SK Foods, LLC,
SKF Canning, LLC, Blackstone Ranch
Corporation, Monterey Peninsula Farms,
LLC, Salyer Management Company, LLC,
SK Farms Services, LLC, SK Frozen Foods,
LLC, SS Farms, LLC, SSC Farming, LLC,
SSC Farms I, LLC, SSC Farms II, LLC, SSC
Farms III, LLC, SKF Aviation, LLC, and
CSSS, LP d/b/a Central Valley Shippers

SEGAL & KIRBY LLP


/s/ Malcolm S. Segal
MALCOLM S. SEGAL
Counsel for Scott Salyer, individually and as
trustee of the Scott Salyer Revocable Trust,
and the Scott Salyer Revocable Trust

FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP


/s/ Paul J. Pascuzzi
PAUL J. PASCUZZI
Counsel for Scott Salyer, individually and as
trustee of the Scott Salyer Revocable Trust, and
the Scott Salyer Revocable Trust

LICHTENEGGER LAW OFFICES


/s/ Larry Lichtenegger
LARRY LICHTENEGGER
Counsel for the Fred Salyer Irrevocable Trust,
Gerard Rose as trustee of the Fred Salyer
Irrevocable Trust, and Salyer American Fresh
Foods

DEFENDANTS' OMNIBUS REPLY TO
OPPOSITIONS TO MOTIONS TO
STAY ADVERSARY PROCEEDINGS