Filed 08/31/11    Case 11-02337    Doc 61

FILED
August 31, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003737681

**12 PAGES**

Gregory C. Nuti (CSBN151754)
E-Mail: gnuti@schnader.com
Kevin W. Coleman (CSBN 168538)
E-Mail: kcoleman@schnader.com
Kathryn N. Richter (CSBN 100129)
E-Mail: krichter@schnader.com
SCHNADER HARRISON SEGAL & LEWIS LLP
One Montgomery Street, Suite 2200
San Francisco, California 94104-5501
Telephone: 415-364-6700
Facsimile: 415-364-6785

Attorneys for
Chapter 11 Trustee, Bradley D. Sharp

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| IN RE: | Case No. 09-29162-D-11 |
| SK FOODS, L.P., A CALIFORNIA LIMITED PARTNERSHIP, | Chapter 11 |
| DEBTOR. | |
| BRADLEY D. SHARP, et al., | Adv. Pro. No. 11-2337 |
| Plaintiff, | DC No. SH-1 |
| vs. | |
| SKPM CORP., INC., SSC & L 2007 TRUST, MONTEREY PENINSULA FARMS, LLC, FREDRICK SCOTT SALYER AKA SCOTT SALYER IN HIS CAPACITY AS TRUSTEE OF THE SCOTT SALYER REVOCABLE TRUST AND TRUSTEE OF THE SSC&L 2007 TRUST, SCOTT SALYER REVOCABLE TRUST, FAST FALCON, LLC, HENRY JOHN HEATH, AND DOES 1-5, | **NOTICE OF HEARING AND *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>Date:  September 1, 2011<br>Time:  10:00 a.m.<br>Place:  Courtroom 34<br>    501 I Street, 6th Floor<br>    Sacramento, CA 95814 |
| Defendants. | Judge:  Hon. Robert S. Bardwil |

PHDATA 3583731_1

**NOTICE OF EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CALIFORNIA 94104-5501
TELEPHONE: 415-364-6700
FACSIMILE: 415-364-6785

**TO: DEFENDANTS AND THEIR COUNSEL**

**PLEASE TAKE NOTICE THAT** Bradley D. Sharp, the duly appointed and acting Chapter 11 Trustee (the "Trustee") in the case of SK Foods, L.P., a California limited partnership ("SK Foods"), hereby moves for a Temporary Restraining Order and an Order to Show Cause why a Preliminary Injunction should not issue, as follows:

(1) Ordering Defendants to Show Cause why Defendants, their respective officers, managers, agents, servants, employees and attorneys, and those in active concert or participation with them, should not be restrained and enjoined pending trial of this action from selling, assigning, transferring, encumbering, dissipating, or moving: (a) the assets which are the subject matter of this adversary proceeding (specifically, but not limited to, 100 shares in SK Foods Australia Pty Ltd. ("Cedenco Stock") and the right to payment under an inter-company loan in the approximate amount of $18 million made by SK Foods, L.P. to SK Foods Australia Pty, Ltd. or its affiliates ("Inter-Company Loan"), and/or the proceeds of same (hereinafter referred to collectively, the "Cedenco Assets"), (b) any rights Defendants hold or may hold in the Cedenco Assets, including but not limited to proofs of debt and proofs of equity interest asserted by Defendants, or any of them, in the liquidation proceedings pending in Australia and New Zealand concerning SK Foods Australia Pty Ltd, Cedenco JV Australia Pty Ltd., and SS Farms Australia Pty Ltd. ("Cedenco Liquidation"), and (c) any proceeds, product, or offspring of any of the foregoing, including but not limited to distributions made on account of such proofs of debt or proofs of equity interest by John Sheahan and Iain Russell Lock ("Sheahan/Lock"), the joint liquidators appointed in the Cedenco Liquidation.

(2) Ordering Defendants to Show Cause why the Court should not direct the appointment of a receiver to take possession of and order Defendants to turn over to the receiver of any and all share certificates, promissory notes, writings, negotiable or non-negotiable instruments, drafts, chattel paper, title documents, or similar documents

evidencing or upon which Defendants assert title, an ownership interest in, or claim to the Cedenco Assets, and further, authorizing the receiver to serve notices upon Sheahan/Lock or in the Cedenco Liquidation proceedings of his or her appointment and authorization to receive and hold any distribution payable to Fast Falcon LLC.

(3) Ordering Defendants to Show Cause why the Court should not pending trial of this action vest the receiver with the full and exclusive right to receive from Sheahan/Lock any and all distributions that may be determined to be payable to Defendants, or any of them, out of the proceeds of the Cedenco Liquidation, and to restrain and enjoin Defendants, their respective officers, managers, agents, servants, employees and attorneys, and those in active concert or participation with them, from interfering with the receiver's receipt, possession, or control over any distributions payable to Defendants, or any of them, out of the proceeds of the Cedenco Liquidation.

(4) Pending hearing on the above Order to Show Cause, enjoining and restraining Defendants, their officers, managers, agents, servants, employees and attorneys, and those in active concert or participation with them, from assigning, selling, transferring, encumbering dissipating, or moving the Cedenco Assets or any rights held by Defendants, or any of them, in the Cedenco Assets (including but not limited to proofs of debt or proofs of equity interests asserted by Defendants in the Cedenco Liquidation).

**PLEASE TAKE FURTHER NOTICE THAT** a hearing on the *ex-parte* application for a temporary restraining order and order to show cause re preliminary injunction shall take place before the Hon. Robert Bardwil, United States Bankruptcy Court Judge, 501 I Street, Courtroom 34, Sacramento, California on September 1, 2011 at 10:00 a.m. This hearing shall be conducted telephonically, so any person wishing to appear must make arrangements to appear by phone by contacting CourtCall at (888) 882-6878.

## MOTION

The Trustee seeks the temporary restraining order and order to show cause re preliminary injunction described above on the following grounds:

3

NOTICE OF EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1. As of the filing of the Debtors' bankruptcy cases, SK Foods, L.P. was the owner of record of 100 shares of stock in SK Foods Australia Pty, Ltd. ("Cedenco"). Under Australian law and Cedenco's corporate constitution, only the record holder of shares appearing on the company's share register is recognized as the legal and equitable owner of the shares. Again, SK Foods, L.P. was, as of the Petition Date, listed as the owner of the Cedenco Stock on the company's share registry. Cedenco's assets were sold in the fall of 2010 for a sum sufficient to pay all creditors in full (including the amount owed on the Inter-Company Loan), and to distribute an estimated $35 million to the holder of the Cedenco Stock. However, in July 2009 – after the filing of the Debtors' bankruptcy cases, the appointment of the Trustee, and the termination of his employment by the Debtors – Scott Salyer, the Debtors' former CEO, executed documents necessary under Australian law purporting to transfer the 100 shares of stock to SKPM Corp. and the Scott Salyer Revocable Trust ("SSRT"), two non-debtor entities controlled by him. At the time Salyer executed the purported transfer documents, he had no authority to act for SK Foods, and his actions were void as a violation of the automatic stay arising under 11 U.S.C. § 362(a).

2. In 2002 and various times thereafter, SK Foods, L.P. made loans and other advances to Cedenco. As of the Petition Date, Cedenco's books and records reflected that it was indebted to SK Foods in the amount of approximately $18 million. Under both Australian and United States law, a written instrument signed by SK Foods, L.P. is required to transfer its rights to the Inter-Company Loan. Australian law further requires that notice of the debt assignment be given to Cedenco. No documentation exists memorializing a transfer of the Inter-Company Loan to any other entity, and no notice was given to Cedenco, which continued to reflect that it owed the Inter-Company Loan to the Debtors as of the Petition Date. Despite the complete absence of any document memorializing same, Defendant Fast Falcon, LLC (an entity in which Scott Salyer serves as Manager), asserts that the Inter-Company Loan was assigned to the SSC&L 2007 Trust (a trust controlled by Salyer) on November 1, 2006, and that it was subsequently assigned to Fast Falcon.

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CALIFORNIA 94104-5501
TELEPHONE: 415-364-6700
FACSIMILE: 415-364-6785

3.　　Fast Falcon, LLC has asserted proofs of debt and proofs of equity interest in the Cedenco Liquidation, claiming that it is the legitimate owner by assignment of the Inter-Company Loan and Cedenco Stock, and therefore, it is entitled to the $53 million currently held by Sheahan/Lock.

4.　　As noted, documentation obtained by the Trustee confirms that Scott Salyer is the manager of Fast Falcon, LLC. Fast Falcon, LLC, however, does not appear to be organized under the laws of any United States jurisdiction. The proof of debt and proof of equity interest filed by Fast Falcon were executed by Cary Collins, who represented himself in those claims to be Fast Falcon's authorized agent. To the best of the Trustee's knowledge, Fast Falcon has no business operations and no offices anywhere in the world. Fast Falcon's only apparent purpose is to conceal Salyer's interest in and control over millions of dollars in funds held in overseas bank accounts.

5.　　Defendants' assertions that the Cedenco Assets were transferred to SKPM Corp., SSRT, and the SSC&L 2007 Trust on November 1, 2006 are a complete and utter fiction. Defendants' sole basis for asserting that the alleged transfers occurred are references to the assignments in footnotes to the Debtors audited financial statements for the periods ending June 30, 2007, and June 30, 2008. Yet the auditors work-papers and Rule 2004 testimony of the auditors, show that the auditors were not provided with *any* documents evidencing a transfer on November 1, 2006 (or at any time), and that they included the references in the footnotes based only on a representation letter signed by Scott Salyer, and journal entries generated by the Debtors. Again, both Australian law and United States law impose certain requirements to convey a party's rights in stock or a debt, none of which were observed here. Merely saying that a transfer occurred in a financial statement does not make it so.[1]

---

[1] As noted below and in the accompanying Memorandum of Points and Authorities, evidence obtained by the Trustee indicates that Scott Salyer and/or the Debtors intended to conceal the fact of the purported transfers, or at least the economic effect of such transfers on the Debtors' balance sheet, from its lenders. SK Foods's former CFO, Mark McCormick, similarly concealed the purported transfers by certifying to the Bank of Montreal on several occasions after November 1, 2006 that no non-ordinary course transfers of the Debtors' assets had occurred. Thus, to the extent that any transfer did

*...Continued*

6.    Gary Perry, the Debtors' counsel, drafted an assignment document in 2008 purporting to transfer the Cedenco Stock to SKPM Corp. and SSRT (although it later became apparent that the documentation prepared by Mr. Perry was not sufficient to convey the stock under Australian law). The assignment prepared by Mr. Perry was transmitted to Lisa Crist, the Debtors' former EVP – Human Resources and Administration on March 28, 2008 for Scott Salyer's signature. Ms. Crist exchanged emails with Mr. Perry on April 2, 2008, asking him to confirm whether the agreements were intended to be dated November 1, 2006 before presenting them to Mr. Salyer for his signature. At that time, Ms. Crist and Salyer were travelling together in New Zealand and Australia. At her recent Rule 2004 examination, Ms. Crist testified that Salyer <u>did not</u> execute the 2008 documents before returning to the United States on April 11, 2008. Hence, assuming *arguendo* that they were executed – the earliest date a transfer of the Cedenco Stock could possibly have occurred is April 12, 2008. But by April 2008, SK Foods was insolvent, especially after taking into account the massive liabilities resulting from criminal activities that came to light on April 16, 2008, when the Federal Bureau of Investigation raided SK Foods's premises and seized numerous documents in connection with its investigation into a wide ranging conspiracy to bribe purchasing managers of SK Foods's customers, to fix prices in restraint of trade, and to defraud SK Foods's customers by falsifying product quality documentation. Several officers, employees, and agents of SK Foods subsequently plead guilty to these acts. Neither SKPM Corp. nor SSRT paid any cash or gave any other value to the Debtors in exchange for the Cedenco shares.

7.    The Trustee has a strong likelihood of prevailing on his claims that Defendants violated the automatic stay by asserting claims to the Cedenco Assets in the Cedenco Liquidation proceedings. Again, no documentation exists evidencing any legally effective transfer of the Inter-Company Loan to the SSC&L Trust, and as such, it remained property of the Debtors as of the Petition Date. Yet Defendant Fast Falcon has asserted that it is the holder of that obligation

---

*Continued from previous page*
　　　occur, the actions of the Debtor and Salyer indicate that such a transfer was made with actual intent to hinder, delay, or defraud creditors.

PHDATA 3583731_1

NOTICE OF EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

and entitled to receive the $18 million expected to be distributed on account thereof from the Cedenco Liquidation. Similarly, the documentation drafted by Gary Perry in 2008 purporting to transfer the Cedenco Stock was not sufficient to effect a transfer of those shares under Australian law, and the required documentation that could have effected a transfer was not executed by Salyer until *after* he no longer had any authority to convey SK Foods's interest in the shares. Hence, the stock remained property of the Debtors as of the Petition Date. Despite this, Defendant Fast Falcon has asserted in the Cedenco Liquidation that it is the holder of the Cedenco Stock, and is entitled to receive the $32 million expected to be distributed on account thereof. Defendants' actions in asserting claims to the Inter-Company Loan and Cedenco stock in the Cedenco Liquidation were indisputably intentional acts. Salyer, or others acting at his direction, attempted to use the 2008 documents to transfer the Cedenco stock in May 2009 (coincidentally, the same day the Trustee was appointed), but were informed those documents were not adequate to transfer the shares. After the deficiency of the 2008 documents became clear, Salyer executed documents which normally are required to transfer stock in an Australian company in July 2009. Cary Collins, acting as Fast Falcon's agent, executed and submitted proofs of debt and proofs of equity interest in the Cedenco Liquidation claiming to own the Inter-Company Loan and Cedenco Stock. It also cannot be disputed that Defendants took these actions in full knowledge of the pendency of the Debtors bankruptcy cases and the existence of the automatic stay.

8. Even if a transfer of the Cedenco stock occurred Pre-Petition, the Trustee has a strong likelihood of success of prevailing on his claims that any such transfer is avoidable under 11 U.S.C. § 548 because SK Foods received less than a reasonable equivalent value in exchange for such transfer and the debtor was insolvent on the date of such transfer.[2] Neither SKPM Corp.

---

[2] Although not explicitly alleged in the complaint, facts learned since the commencement of this adversary proceeding indicate that the transfer, if it occurred, was made with actual intent to hinder, defraud, and delay creditors. Salyer instructed his advisors to reflect the transfers on SK Foods's financials in a way that masked the economic impact of doing so. Mr. McCormick also represented to BMO that no transfers occurred. Both of these facts demonstrate an intent to conceal the fact of the transfers from creditors. The Trustee reserves all rights to amend the complaint to include claims based upon 11 U.S.C. § 548(a)(1)(A) and Cal. Civ. Code § 3439.04(a)(1).

nor the SSRT contributed any cash, property, or gave any other value to the Debtors in exchange for the Cedenco stock. By April 12, 2008, the earliest possible point at which a transfer could have occurred, SK Foods was experiencing financial distress, and had incurred millions of dollars in additional liabilities due to its criminal conduct, clearly rendering it insolvent. Furthermore, Fast Falcon, LLC, the entity holding itself out as the assignee of SKPM Corp., SSRT, and the SSC&L Trust's rights to the Cedenco Assets, itself is controlled by Salyer, which prevents it from asserting a "good-faith transferee" defense to avoidance under 11 U.S.C. § 550(b).

9. Irreparable injury will result to the SK Foods estate if Fast Falcon is not restrained from making further transfers of its claimed interest in the Cedenco Assets, and Defendants are not enjoined pending trial from taking further actions to exercise control over the Cedenco Assets, or, should it be determined that transfers of those assets occurred, if they are not restrained from dissipating any distribution payable to them from the Cedenco Liquidation. Salyer and certain Defendants under the control of or working in cooperation with Scott Salyer have repeatedly transferred assets in violation of this Court's Orders. The first example is Salyer actions in connection with the so-called "drum-line" avoidance action. As the Court likely recalls, it issued a temporary restraining order prohibiting CSSS, LP and those acting in concert with it from shipping the drum line out of the State of California. Although the stay order mandated by Judge Karlton has prevented a formal adjudication of contempt, Salyer clearly violated the Court's temporary restraining order by enlisting the cooperation of others to sign export documents which allowed the drum line to be loaded on a container vessel and leave the Country.

10. The drum line, however, was merely the first in a series of violations. Bank records obtained by the Trustee in the last few days in connection with his investigation of possible violations of the preliminary injunction entered in the Trustee's substantive consolidation and quiet title adversary proceedings show that Defendants misappropriated over $850,000.00 in funds subject to the injunction, and then falsified Court-ordered accountings to cover that up. More than $800,000.00 was paid directly to Cary Collins. $15,000.00 was paid to

NOTICE OF EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

directly to Scott Salyer. The bank records show unequivocally that Cary Collins was at the center of the misappropriations. Cary Collins is the individual who filed claims on Fast Falcon's behalf in the Cedenco Liquidation, and who would be designated to receive any distribution made to Fast Falcon on account of those claims. Mr. Collins, however, is the individual who assisted Salyer in transferring millions of dollars to overseas bank accounts in 2009, which, according to allegations made by the United States in Salyer's criminal case, was done to provide Mr. Salyer funds with which he could live comfortably overseas and avoid prosecution. Mr. Collins is also a convicted felon, having plead guilty to charges of bank fraud.

　　　　11.　　Although Defendants were forced to "put back" most of the misappropriated funds, the repeated violations of the Court's orders make clear that no one on the Salyer side can be trusted refrain from any artifice or act of fraud to evade the Trustee's claims. Nor can Defendants be trusted not to dissipate any money that may come to Fast Falcon from the Cedenco Liquidation pending the conclusion of this adversary proceeding. To the contrary, if Mr. Salyer, Mr. Collins, or any of the Defendants have control over the $50 million for even a moment, it is a certainty that the money will be transferred to foreign bank accounts beyond this Court's jurisdiction and the Trustee will be deprived of any meaningful remedy in this case.

　　　　12.　　Under well established Ninth Circuit law and California law, preliminary injunctive relief including the appointment of a receiver are well recognized remedies in fraudulent transfer actions where there a defendants' ability to dissipate or make further transfers of the assets pending trial would irreparably injure the plaintiff. That is precisely the circumstance presented here.

　　　　13.　　The injury to the Trustee of not granting the injunction is greater than any injury to Defendants of granting the injunction. The assets at issue here (essentially, legal claims to money and the recoveries on same) are not necessary for any business or operations of Fast Falcon. To the extent Fast Falcon or Defendants receive a distribution of funds before this adversary proceeding concludes, provision can be made for reasonable access to and use of the funds under appropriate Court supervision, so long as an independent fiduciary holds and controls the actual disbursement of those funds.

NOTICE OF EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CALIFORNIA 94104-5501
TELEPHONE: 415-364-6700
FACSIMILE: 415-364-6785

PHDATA 3583731_1

14. There is a public interest in preserving the Cedenco Assets for the benefit of SK Foods's creditors.

15. *Ex parte* relief is warranted. Fast Falcon, LLC claims to hold the rights to Cedenco Assets. Salyer and Cary Collins are the individuals who control or act for Fast Falcon, LLC. Salyer and Mr. Collins have demonstrated by their conduct that they will go to great lengths to thwart the Trustee's access to his legal remedies, and defy court orders when they perceive it in their interest to do so. The Trustee is concerned that if immediate relief is not entered, Fast Falcon will attempt to transfer its purported rights in the Cedenco Assets to yet another mysterious offshore entity in an attempt to evade this Court's jurisdiction.

## NOTICE TO DEFENDANTS AND OPPOSING COUNSEL

The Trustee filed the Complaint in the above-captioned actions on May 4, 2011. Defendants have been on notice of the claims made by the Trustee for nearly four months.

On Wednesday, August 31, 2011, at approximately 9:30 a.m., counsel for the Trustee contacted Defendants' counsel by telephone and contemporaneously served them by email with this notice of motion and motion, and all supporting documents.

The Trustee will request that the Court determine that notice to all Defendants, including Fast Falcon, is sufficient for the following reasons. On August 5, 2011, Dean Gloster and Kelly Woodruff of Farella Braun Martel LLP ("FBM") entered a general notice of appearance and request for notice on behalf of all Defendants except John Henry Heath, *including* Fast Falcon LLC [Doc. No. 28].[3] Fast Falcon is mentioned three times in that notice of appearance. FBM has also appeared on behalf of the "Salyer Parties" in Rule 2004 examination proceedings conducted by counsel for Sheahan/Lock in the Chapter 15 proceedings seeking to investigate competing ownership claims to the Cedenco Assets. No other counsel made an explicit appearance for Fast Falcon in the Ch.15 proceedings. But as noted above, only Fast Falcon LLC

---

[3] The appearance was made on behalf of "Defendants SKPM Corp., SSC&L 2007 Trust, Monterey Peninsula Farms LLC, Scott Salyer in his capacity as Trustee for the SSC&L 2007 Trust and the Scott Salyer Revocable Trust, Scott Salyer Revocable Trust, and Fast Falcon, LLC.

PHDATA 3583731_1

NOTICE OF EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

has asserted proofs of debt or proofs of equity interests in the Cedenco Liquidation. Salyer's story is that whatever rights SKPM Corp., SSRT, and the SSC&L 2007 Trust had were assigned to Fast Falcon. Therefore, the only reasonable inference to draw from FBM's appearance on behalf of the "Salyer Parties" is that Fast Falcon is in actuality FBM's client. This inference is also justified because Scott Salyer is Fast Falcon, LLC's manager.

FBM, however, has made statements to the Trustee implying that it does not represent Fast Falcon. The Trustee believes that FBM has been instructed to do so in order for Fast Falcon to evade this Court's jurisdiction. The Trustee contacted FBM on August 25, 2011 pointing out FBM's general appearance for Fast Falcon, and seeking clarification about who it was or was not representing. FBM did not respond to the Trustee, however, on August 26, 2011 it purported to withdraw its appearance for Fast Falcon. Notably, the withdrawal does not explicitly disclaim any representation of Fast Falcon. However, in view of: (1) FBM's prior general appearance for both Fast Falcon and Salyer in this action, (2) its appearance in the Chapter 15 proceedings in which, of all the Salyer Parties, only Fast Falcon ostensibly has an economic stake, and (3) the fact that Fast Falcon is Sayler's alter ego (because he is Fast Falcon's Manger, and Fast Falcon's only purpose is to shield Salyer's true interest in funds held in overseas bank accounts), the Trustee submits that service upon FBM is sufficient notice of these proceedings on all Defendants, including Fast Falcon.

Nevertheless, in an abundance of caution, copies of the foregoing documents are also being served contemporaneously with their filing by messenger to Fast Falcon, c/o Scott Salyer, Manager, at 3903 Rhonda Road in Pebble Beach, California where he is under house arrest, and to Fast Falcon, c/o Cary Collins, its Authorized Agent, at 3450 21st Street, San Francisco, California. As shown in the Declaration of Gregory C. Nuti filed herewith, Salyer is Fast Falcon, LLC's Manager, and has authority to transfer its funds. Salyer's own characterization of his position with Fast Falcon and authority to transact bank business establish that Salyer either occupies a position of control, or alternatively, occupies a position that gives a high probability of assurance that process will be delivered to Fast Falcon's responsible individuals, which is all that is required to find that service upon him is proper to join Fast Falcon. Moreover, Cary

Collins has also represented himself to be Fast Falcon's agent in connection with asserting its proof of debt and proof of interest in the Cedenco Liquidation – the very assets the Trustee seeks to recover in this action. According to Mr. Collins's counsel in Australia, "[Collins] was involved in assisting Mr. Salyer with his legal representation and his entities." This admission further confirms that Salyer has delegated responsibility for Fast Falcon's legal affairs to Collins, and that Collins therefore has implied authority to accept service on Fast Falcon's behalf in matters germane to the rights Fast Falcon is asserting in the Cedenco Liquidation.

This motion is made pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure, Rule 65 of the Federal Rules of Civil Procedure and Local Rule 7065-1. This motion is based upon the accompanying Declarations of Bradley D. Sharp, Gregory C. Nuti, and Michael Carlson and the Exhibits attached to the foregoing, the Request for Judicial Notice of the filings in the criminal proceeding against Mr. Salyer, the accompanying Memorandum of Points and Authorities in Support of Motion for Temporary Restraining Order, Plaintiff's Complaint in the above-captioned action, and upon such oral and/or documentary evidence that may be presented at the time of the hearing upon this motion.

The Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction is served herewith and has been delivered to the Court.

Dated: August 29, 2011

SCHNADER HARRISON SEGAL & LEWIS LLP

By: /s/ *Kevin W. Coleman*
Kevin W. Coleman
Attorney for Bradley D. Sharp, Chapter 11 Trustee

NOTICE OF EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION